Abraham G. H. Reimold v. Commissioner.
Reimold v. Commissioner
Docket No. 111789.
United States Tax Court
1943 Tax Ct. Memo LEXIS 232; 2 T.C.M. (CCH) 334; T.C.M. (RIA) 43307; June 25, 1943
*232 Thomas McNulty, Esq., 1 Exchange Place, Jersey City, N.J., and Alexander H. Beard, C.P.A., 90 Broad St., New York City, for the petitioner. Robert S. Garnett, Esq., for the respondent. LEECH Memorandum Findings of Fact and Opinion LEECH, Judge: This is a proceeding for the redetermination of a deficiency in income tax for 1939 in the amount of $2,609.41. The issues are (1) whether respondent erred in disallowing a deduction from gross income of the sum of $12,232.53 as a loss sustained in the taxable year and incurred in trade or business, and (2) whether petitioner should be allowed to reduce item 11 "Recovery from bad accounts $1,488.43" to $796.06. This last issue was raised by an amendment to the petition permitted at the trial. The record consists of oral testimony and exhibits. The petitioner filed his income tax return for the year 1939 with the collector of internal revenue at Newark, New Jersey. Findings of Fact The petitioner is a resident of Orange, New Jersey. Prior to 1918 he was employed by the Woburn Degreasing Company of New Jersey (hereinafter designated the "New Jersey Company") and the Woburn Degreasing Company of Massachusetts (hereinafter designated the "Massachusetts *233 Company"). These two corporations were originally engaged in degreasing tanned leather for commercial use. Later they expanded their operations to cover other fields. The father of the petitioner died on October 31, 1918. At his death he was the president of both the New Jersey and the Massachusetts companies. His will was probated and the petitioner qualified as sole executor. The principal assets of the father's estate were stock holdings in the New Jersey and the Massachusetts companies. There was also associated with these two companies one O'Rourke, a large stockholder, who succeeded petitioner's father in the presidency of said companies. In 1928 O'Rourke died and petitioner qualified as one of the executors of his estate. The petitioner accepted no executorial compensation or fees for administering the estate of his father. Petitioner received the sum of $1,200 as one of the executors of the O'Rourke estate which was turned over by him to the decedent's widow. Petitioner had enlisted in the United States Army and upon his discharge he reentered the service of the New Jersey and Massachusetts companies as treasurer and general manager. Upon the death of O'Rourke in January *234 1928, he became the president of both companies and continues to hold such office. From 1919 to 1932 the petitioner's yearly compensation from the New Jersey and Massachusetts companies was approximately $15,000; from 1933 through 1937, approximately $21,000; in 1938 he received $29,420.04; in 1939, the year involved, $26,429.17, plus an additional sum of $3,900 from Woburn, Incorporated, an allied company; in 1940, $26,080, and in 1941, $34,855. In 1928, serious competition developed in the degreasing business. As a result the price on basic material, such as patent leather sides, dropped from $1.08 to $.48 a dozen, which was below production cost. In an effort to protect the business of the New Jersey and Massachusetts companies, petitioner entered into negotiations with one with one Weathers, general manager of the Byllesby Company of Boston, investment security brokers. As a result of these negotiations the competing company went out of existence and a smaller company was set up and operated by the former owners of the competing company and the New Jersey and Massachusetts companies. In order to close the deal with Weathers, and at his request, the petitioner purchased certain *235 shares of Northern States Power "A" stock at a price in excess of $13,000. Petitioner used money of his father's estate to make the purchase, taking title in his own name. Upon being advised that the "A" stock of the Northern States Power Company was not a legal investment permitted an executor under the laws of New Jersey, the petitioner sold the stock. The net price of $1,266.47 realized from the sale was turned over to the estate. At the same time, the petitioner canceled a debt of the estate to him to the extent of the difference between the original cost and the net amount realized on the sale. The petitioner devoted all his time to the affairs of the New Jersey and Massachusetts companies, with the exception that for a period of two years he devoted some of his time to the Zenitherm Company in which the two companies were financially interested, and of which he was also president. The only executorial duties he ever performed were in respect to the Reimold and O'Rourke estates. The petitioner during 1939 was not engaged in the trade or business of acting as executor or trustee. The contested loss was not sustained in 1939 in trade or business, within section 23 (e) (1) of *236 the Revenue Act of 1938. In his income tax return for 1939 petitioner reported as income "Recovery from bad accounts $1,488.43". The amount of $690 was erroneously included in that sum. Opinion The petitioner, in his 1939 income tax return, deducted from gross income the sum of $12,232.53 as "Surcharge as Executor - to repay loss to Estate of A. G. Reimold on Securities not legal investments." Petitioner contends that this amount was properly deducted as a loss sustained in said year incurred in a trade or business under section 23 (e) (1) of the Revenue Act of 1938. [1] The petitioner on brief states that no claim is made that the deduction is proper as an ordinary and necessary expense paid or incurred in 1939 in carrying on a trade or business under section 23 (a) of the Revenue Act. The petitioner makes no contention that he held himself out to the public as qualified to administer estates or trusts or that he devoted any considerable portion of his time to work of that character. Petitioner's theory is that the Reimold and O'Rourke estates held a considerable amount of the stock of the New Jersey and the Massachusetts degreasing companies; that competition was seriously impairing *237 the earnings of the Massachusetts Company; that in order to protect the stock holdings of the estates of which he was executor he was required to negotiate so as to eliminate the price cutting competition in the degreasing business. The testimony of the petitioner is that the purchase of the capital stock of the Northern States Power Company was one of the principal factors influencing the agreement which resulted in elimination of the injurious competition. The two companies thereafter prospered. This resulted in a benefit to the stock holdings of the two estates of which petitioner was executor. It was also advantageous to the petitioner, who was not only a large stockholder, but was receiving a lucrative salary from both companies. Petitioner testified that, owing to the competition between the degreasing companies, the cash reserves of the two companies were so depleted that he used the funds of the Reimold estate to make the purchase. The loss was, of course, not occasioned by the purchase of the stock in 1928. If it had been purchased by either of the two companies for the purpose of eliminating competition, the transaction would have constituted a capital expenditure. Cf. ; *238 . Assuming the stock purchased for the estate was a legal investment, any loss would be a loss to the estate; any profit would belong to the estate. The petitioner contends the investment was an illegal one for a fiduciary, and he was legally liable to make the estate whole. Therefore, he asserts the loss was one incurred by him in carrying on a trade or business. Assuming, without so deciding, that the petitioner was legally liable to the Reimold estate, we are unable to perceive how such a loss was incurred in carrying on a trade or business in which the petitioner was engaged. We regard the case of ; cert. denied, , as decisive here. It was there held that a trustee in making *239 an illegal investment was not engaged in carrying on a trade or business. Cf. , The cases of , and , relied upon by the petitioner, are not applicable. The facts in those cases are entirely dissimilar from the facts here. The "loss" here was occasioned by reason of the illegal investment by the petitioner as a fiduciary. The petitioner did not make the investment as an individual to aid the corporations of which he was president. The investment was made on behalf of the estate presumably to protect its stock holdings in the two companies. The question whether the estate could have deducted the loss by reason of the expenditure for such purposes is not before us. The allowance of a deduction from gross income is a matter of grace and taxpayer must bring himself squarely within the terms of the statute. . This the petitioner did not do. We sustain the respondent on the first issue. The *240 petitioner by proper amendment at the trial has raised the issue of overpayment on his 1939 income tax. The claim is made that in reporting an item of $1,488.43 as a recovery from bad debts he erred in including the sum of $690. He testified that the $690 represented his liability as endorser on a note he was required to pay. Upon being reimbursed in 1939 he had included that sum in gross income upon the assumption it had been previously deducted as a bad debt. Later he learned it had not been charged off on his books and had not been previously deducted. Petitioner relied solely on his oral testimony to support his claim. No records evidencing the facts testified to were offered in support of the claim. But the testimony of the petitioner was not discredited on cross-examination and was not contradicted by any testimony. The respondent contends, however, that the unsupported testimony of the petitioner is insufficient to sustain the claim. We do not agree. We think the uncontradicted testimony of petitioner was sufficient in the premises. Cf. ; . *241 We sustain the petitioner on the second issue. Decision will be entered under Rule 50. Footnotes
1. SEC. 23. DEDUCTIONS FROM GROSS INCOME. In computing net income there shall be allowed as deductions: * * * * *
(e) Losses by Individuals. - In the case of an individual, losses sustained during the taxable year and not compensated for by insurance or otherwise - (1) if incurred in trade or business.↩